I hope to reserve four minutes for rebuttal. Subject to the court's questions, I will focus on Ms. Smith's standing and free speech arguments, but would first like to comment on three stipulated facts because two simplify the standing analysis and one simplifies the merits. The district court found standing on the communication clause claim and the reasons apply equally to the accommodation clause. First, the parties have stipulated that Ms. Smith has immediate plans to create custom wedding websites with an example found in the record at appellant appendix 2-333. Second, the parties have stipulated that Ms. Smith has not engaged in that speech because Colorado claims that it will violate its nondiscrimination law. As to the merits, the Supreme Court in Hurley held that a speaker who serves everyone has the First Amendment right to decline to express messages that violate her conviction. Here, Colorado stipulated that Ms. Smith serves everyone, that she declines to create speech based on the requested message, and that every website she will create expresses a celebratory message about that marriage. So I'm clear. The state has stipulated that Ms. Smith does serve gay customers for the aspects of her website and other websites that she creates. Yes, the stipulated facts are in the record, and at section 2-322 of appellant's appendix, they've stipulated precisely to that fact, as well as on 323. So her product is a website. Do we know what the website looks like? We do. In appellant's appendix 2-333, there's a specific example of the website that she wishes to produce. In addition to that specific example, the stipulations themselves also explain the messages that she would like to create, including expressing celebratory messages about marriage between a man and a woman, and to be able to use those opportunities to celebrate and promote her religious views on marriage. These types of statements... Why wouldn't she be able to give the same message if she was doing a website for people who are gay? Because the message is different. In the stipulated facts and in the sample that is found at 2-33, you can see that it tells a unique story of the couple's love story, not just simply an announcement of a wedding, but instead is sharing their love story with words and graphics as well. It's pure speech, and the Supreme Court has said that in pure speech instances that the compelled speech doctrine applies as district scrutiny. That would be the case here as well. But wait, one is different. It is the customer who tells the drafter of the website what they want in the website. Isn't that the way it works? Not necessarily. In fact, the stipulated facts say that while sometimes the customer may come and give some general information, that the actual website is the creation of 303 Creative and Mrs. Smith. She creates custom artwork, she uses pictures, she uses text to create the imagery and the messaging about telling the story of that couple. What is there in, I guess, a prototype? You're saying she has a prototype website. What is there in there that she could not make available to people who are gay? In the record at 2-322, as well as 3-325, it's very clear that this is not a prototype. This is not a plug-and-play type of website where you just insert names. But it's unique, original, custom artwork and custom speech that's created to tell that particular couple's story. That's a message that Mrs. Smith can't create because of her convictions about marriage between a man and a woman. In her business, the stipulations are also that she treats same-sex marriage and the messages that would be involved in the website the same as any other customer who would ask her to create a message that violates her convictions. She cannot do so. And the compelled speech doctrine protects that. I'm trying to grapple with this distinction between status of the customer and the message that's being expressed through the creation of the website. Hypothetically, let's say a heterosexual wedding planner came to her and said, I have five mock-up sites that I can show to potential customers. And Mrs. Smith was asked to create four that celebrated an opposite-sex marriage and one that created a same-sex marriage. Would she produce five different mock-up websites for that customer? No, she would not because it's based on the message that's being requested. Each wedding website is custom. I think Hurley, that the Supreme Court's case in Hurley provides an appropriate framework. And this Court's decision in Crestman follows that framework. Hurley says that when you have speech that in any way may touch on or relate to a protected class, the first thing that you look at is, is the speaker expressing something? Is it speech? And the second is, is that speech objected to based on the message? The way that the speech is being produced, what was it saying? And does the speaker otherwise serve people from all different walks of life, including that protected classification? In Hurley, were we dealing with a commercial advertising as we're dealing with here? What matters here is that we were dealing with the public accommodation in both cases. And that was a parade association that was a public accommodation under Massachusetts law. But not a commercial advertisement situation. Your Honor, we're not dealing with a commercial advertising situation in terms of commercial speech here. But if you're asking whether it was a for-profit entity... Why aren't we? Why aren't we? Because commercial speech in the document... She's putting this out on her website saying, these are the people, these are the types of people that I will serve and provide services to. Is that not a commercial advertisement? That's not the statement under the communications clause that she proposes. It's not at all. It expresses her beliefs on marriage. And that's found at 2362. But she says she will not provide these websites to same-sex couples. She says in her statement under the communication clause that she believes marriage is between a man and a woman and needs to express messages consistent with that. In addition, though, under the accommodation clause, we're talking about the creation of those websites. And I believe your question was, in Hurley, would it apply because Hurley involved potentially a non-profit or an entity that wasn't a commercial entity. The answer to that is Hurley itself in the decision says that this compelled speech doctrine actually applies to business corporations. And the court has applied it to business corporations again and again. We can look at it applying to publishers, for example. Why doesn't Pittsburgh Press fit here? And why isn't your client covered by Pittsburgh Press? Because Pittsburgh Press had to do with using words to facilitate illegal conduct. And that's not at all. Isn't that what is happening here? If it's illegal to discriminate against same-sex persons, isn't she doing that by her statement that she proposes? She treats everyone equally but declines to express messages if those messages violate her convictions. It may be the wedding planner. It may be a parent that requests it. It may be a sibling. So you're saying if my religion tells me that I can discriminate against people, then I'm good? I can do that? Oh, not at all. In fact, what we find in the court's decision in Hurley as well as in cases like Holder and other cases, is that generally applicable laws that regulate conduct require this court to apply strict scrutiny when they sweep in speech, when there's an impact on speech. And Hurley expressly says that as well as other cases. If we think about it in terms of other cases as well, we can look at the Miami Herald case, as well as different cases like Riley involving fundraisers. If we look at strict scrutiny, what happens there if we go down that path with you? If we look at strict scrutiny, Colorado has failed its burden in that. We know that from other cases, for example, Hurley, which is the specific balance in this particular context, Hurley said that you can't compel speech, that there isn't a sufficient compelling interest that's narrowly tailored. So strict scrutiny is not satisfied in any attempt to compel speech, which was at issue in that particular case. We also know that the case law requires Colorado to provide particularized analysis. So some sort of broad interest in eradicating discrimination is insufficient for several reasons. The first here is that it's over-inclusive, and by being over-inclusive, the state has no interest when Ms. Smith is serving everyone, but simply declining to express particular messages. Isn't the exception you're asking for here, won't that just swallow up the rule? I mean, I'm not a big fan of slippery slope arguments, but where's the limiting principle? Not at all. In fact, it's a very narrow application. The narrow application, it only applies to those who are in the business of creating speech, and only when they're asked to create speech that is objectionable. And in addition to that, Colorado's principle has absolutely no limiting principle. This rule doesn't just protect people like Ms. Smith, it protects all speakers who don't want to express messages that violate their convictions. And that's because the compelled speech doctrine is anchored in human dignity. A Mormon filmmaker that may not want to promote Scientology, but actually did a film promoting Mormonism. Those types of scenarios. In terms of the narrowing application as well, the objection has to be to the message and not to the person. And that's the precise analysis that Hurley used in that case. And Janus, I think, is particularly compelling here, and that Janus is the most recent compelled speech case by the Supreme Court. And it says that compelling people to speak messages is always demeaning, that it betrays their convictions, and that speech on sexual orientation and gender identity and controversial issues deserves the highest amount of protection under the First Amendment. Creating neutral speech under Hurley, the court has said, is a decidedly fatal objection. We do not compel speech. If there are no further questions, I'd like to reserve the remainder of my time. I do have a question. Can you hear me? I can, yes. In the statement, the proposed statement that she wants to post on her website, her religious convictions and her expression are basically contained in the first two paragraphs, right? Yes. And the third paragraph just says that she's not going to serve people who want to have gay marriages, correct? It explains, yes, her beliefs on marriage and that she's unable to design custom websites, custom speech. So we could, you know, have her full expression of her personal and religious beliefs if she just drops the third paragraph out, correct? If Your Honor is asking about the communication clause... I'm asking about her statement. She would have her full expression if she didn't have that third paragraph in where she said she's not going to provide these websites to gay people. But the court has to decide the underlying question because she has the right to... But that's not my question. Wouldn't, isn't her expression of her beliefs, religious and personal, fully contained in the first two paragraphs? Respectfully, Your Honor, I think that's beside the point in that she... But you know what, you know what, you know what? If it's beside the point, we'll figure that out. You answer my question. Well, what I mean, Your Honor, is that you have to answer the question of whether she can engage in the speech before you can decide any other questions. I understand, I understand your position on that. I have a very simple question. Aren't her religious and personal beliefs fully contained in the first two paragraphs of that statement? And the third paragraph is not necessary for that. Yes or no? The third paragraph is necessary for her to be able to cite what her beliefs are on marriage, and it violates... So her beliefs on marriage is she's not going to provide her product to gay people. No, that's not at all what the statement says, Your Honor. If there are no further questions, I would hope that the court would consider granting additional rebuttal time. Thank you. Let's hear from Colorado, Mr. Olson. Good morning. Chief Justice Tinsley-Mitchell, may it please the court. The company's challenge should fail here for two reasons. First, the company has no standing to sue about a business it does not conduct. It's not in the wedding website business today, and administrative proceedings that may never take place. It's not shown a credible fear of prosecution. Well, can't we say this is a pre-judgment, pre-prosecution action? I mean, they're anticipating that there will be prosecution if she presents and puts on her website the statement she is proposing. Correct. And under this court's standing, or under this court's standing jurisprudence, they have to show that there's a credible fear of prosecution. It's a language here. It's maximum $500 fine. And they haven't done that because they point to only four examples in the record of similarly situated professionals being facing administrative proceedings. And in the record at 1-26, pages 26 through 29, three of those four were dismissed with no probable cause finding. So there is no credible threat of prosecution that is required. What would it take for you to say that there is a credible threat, an actual prosecution? Well, I think it would take at minimum an actual customer. And she said, I'm not going to serve this customer because of my beliefs. And I think much of what we heard during my friend's argument illustrate why this case is not right for review. These are all hypothetical uncertainties about what would happen. But at a minimum, there would need to be a specific customer and or a specific complaint, neither of which exist in the record. Then you're really forcing her to break the law to establish standing. And that's really not what the case, the credible threat case to say, will this legal regime, either the commission or the private enforcement that we have, raise an inference that there's a credible threat of prosecution so that prospective plaintiff doesn't have to commit a violation before she can establish standing. Chief Judge, I don't think that's the case here because she brings a claim both for the accommodations for the for the discrimination clause and the advertising clause. And the only thing we know for certain is the text that she wants to that the company wants to put on the website that they say violates advertising clause. But that has to be looked at in context here, because as Judge Briscoe rightly identified, the question here is, does the advertising clause limit the ability to, is it a public accommodation law that that which prevents incidental speech that that goes to the underlying illegal conduct. And we don't know on this record what that underlying conduct is because we have no customer. We have no examples, which is why under the rightness doctrine. What about the prototype that Ms. Wagner says it's in the record. Well, I think the prototype actually shows why there's no standing, because we hear over and over again from my friend that that it's a custom curated process that it tells the individual's life story. And without a specific individual or customer, we have no basis to know what whether the prototype will bear any resemblance to the final product. And under the rightness Can we assume is that if there's, there's a website for gay people is going to show pictures about them and they're both going to be of the same sex. Not necessarily. And I think the, the example of in the shows why on the merits. The case is not one of expression of a message, but who they will serve if Alex and Taylor have a wedding that come to the company and say we'd like a wedding website that says celebrate our joy. We don't want any pictures of us. We want to talk about the joy of marriage and and the company under the stipulated facts would make that website. If Alex and Taylor were opposite sex couple opposite sex couples and would turn that customer away if Alex and Taylor were same sex customers and so under same sex marriage. Can I follow up on that because as I asked Miss Wagner this status versus conduct issue is troubling to me and it looks like she currently serves without any objection. Customers who are gay and that that's been stipulated in the record, but if a if a customer comes and wants to create a same sex weddings site. She won't produce that is she turning away customers. Because of their sexual orientation or she turning them away because of the message they want to communicate. Well, the Alex and Taylor example demonstrates it's because of the sexual orientation, because a same sex wedding is a perfect overlap with gay and lesbian customers because an issue is turning them away in the Alex and Taylor example solely because They are happen to be a same sex couple seeking website services and she would provide the exact same services to someone of an opposite sex. So If a gay wedding planner came to her and he was designing a website for an opposite sex marriage. She would serve that customer, regardless of his sexual orientation, would she Well, the customer in this circumstance. She touched him, which is a couple getting married. They're the ultimate customer of the wedding and in that circumstance, the customers, you know, the wedding, wedding planners business. Well, The identity of the couple, the sexual orientation of the couple. Is the dispositive factor. Under the company's decision who to serve and who not to serve and whether or not that's a third party customer in the rare exception, but in the mine run of cases that The people, the customers for wedding websites are the people getting married and in those circumstances, it, it solely depends on whether or not it is a same sex or opposite sex couple as to whether the company will serve them. Under their claim. And I think this reliance on on Hurley to say that because it's speech. Therefore, Hurley applies, even in the commercial public accommodations context is simply misplaced that would have disposed of masterpiece cake shop at the Supreme Court. Because there, the, the, the Baker claim to express a speech. But the majority and masterpiece cited Hurley for only one thing and masterpiece. And that was for the bedrock principle that public accommodations law that prevent discrimination, do not run afoul of the First Amendment. And in Hurley, they recommended the court recognized that it applied as to which organizations, not which people, but which organizations could participate in a private parade. And they said it was a quote peculiar application of state law in that circumstance. And in that limited circumstance. They said that the parade organizer could dictate who could participate in the parade. We submit that the case controlling the outcome here is rumselled which talked about these public accommodation or talked about laws like public competition there was a Solomon amendment that say you cannot It's a conduct case. And of course, in conduct cases, there are some incidental speech that has put at issue about the law school in that circumstance, what they could say or couldn't say about the process, but you look at who the customers are Under settled law. And if a customer is turned away as the company wants to do here because of their membership in a protected class status. Why would you say that Dismiss Speeches is incidental to her business. I mean, I can run, you know, in Rumsfeld, it was access to the Harvard Law School or whatever and providing a room with really didn't endorse a particular message. But, you know, how do we draw the line between what is and is not incidental speech that's restricted Well, to be clear. The line is, does the government regulation restrict speech or conduct and if it restricts conduct. Is there at some incidental restrictions on speech that accompany that restriction on conduct. Didn't didn't didn't Colorado those stipulate that there was expressive content here. Yes, because the rule doesn't matter what the content is what matters under Colorado law is who the customers are and you cannot be turned away. Or who the customers are and this expressive non expressive distinction. I think offers a false promise of Certainty, the Supreme Court in masterpiece could not agree as to whether or not Mr. Phillips cakes and issue there were expressive or not expressive and having a line that depends on a subjective discussion of whether something is expressive or non non expressive is very unworkable and create significant administrative problems. Compelled speech here. No, we do not have compelled speech here. No one is forcing the company to say anything. Well, aren't they aren't isn't the state compelling plaintiff here to not say something that is to to fashion her statements in a certain way. That is exclude statement. No, what we are saying is the company cannot discriminate Who it serves based on a protective class status. Along with that restriction on conduct, who they can serve. We have the advertising clause which says Just like the Fair Housing Act, the discrimination employment act that say you cannot advertise your intention to do something illegal, just as you can't do something illegal. So here the company can either With its beliefs can either do what it's done, which is not make wedding websites, but make websites for all other customers or if it's going to make wedding websites. It has to make them for people who are both Christian and Jewish. So haven't you just described compelled speech. No, because the You just said what the plaintiff could do to come properly within see a DA As a business, the plaintiff cannot choose its customers based on protected class status, whether it's selling Speech or non speech items. What do you do with with the professional speech writer or the professional filmmaker that would refuse to write a speech that celebrates same sex marriage or Produce a documentary that would produce that would celebrate same sex marriage when they would they would do a film or a speech on the other side. Well, the question isn't what the content of the speech is it's whether they would turn a customer away because of protected class status and I think these They would turn the customer way because they didn't want to write the speech. Well, I mean, is that is that conduct or is that compelled speech. It's it is conduct because it's a basic no one is going to make a speech writer. Write a speech about something that the speech writer doesn't write speeches about for other people. The question is, is, is there a protected class basis for why that person was turned away in a simple Seems to be my hypothetical that there is protected class reason that those customers will be turned away. I won't write a speech endorsing same sex marriage. Well, A viewpoint. Again, keep in mind that the delta between the customer and the viewpoint. And here, the question is, will he write a writer write a speech for same sex marriage. For a gay or lesbian customer the same speech that they would write for a heterosexual customer not the viewpoint in terms of what the speech says is not part of the analysis and I do want to close Wait, wait, wait, Mr. Olson. Mr. Olson. Yeah. We look at the proposed statement. And these are the the communication or the advertising clause. If the statement was limited to the first two paragraphs. Would there be a problem with the communication. Not on that statement by itself. Right. So the only problem with communication clause comes with the third paragraph. Is that correct, Yes, because that is the only part that says same sex couples are not welcome in my business. The company can can speak their beliefs, all they want about their views. It's just a conduct based question, who is being turned away because of a protected class. So if Plaintiff wish to express her own views. Of same sex marriage on a website or a same sex marriage. She could say what she says in paragraph two, it would seem a little incongruent, but you could say that Yes, what matters is whether someone is turned away because of their protected class status. The company. Are they violating the advertising. Isn't gone. In the briefing and when those type of statements. If they were Communicated within the business. Make a customer feel unwelcome or demeaned. And when that violate that that part of Kata You're out of my time expired. May I answer briefly. No, please. Yeah. Well, it So the only thing before the court right now is a facial challenge to the unwelcome clause, there is no specific facts and certainly in some instances, one could imagine Things that come very close to the line that says, for instance, We have a separate entrance for same sex for gays and lesbians and we do for heterosexual couples in our business that wouldn't would not say I'm not serving them, but that would be a good example of being unwelcome. So on the facial Like in this case if If the plaintiff here put her statement on the website basically said, you know, I will provide websites for same sex marriages, because the government's making me do that. And otherwise, would that would that make customers feel unwelcome. Well, On that fact, probably not because I think most of us understand that we have an obligation to follow the rules and that us offering Providing goods and services to the company in or to the public in Compliance with the rules doesn't necessarily mean we endorse all the rules that we're following, but that we live in a society where public accommodation means that To have a free marketplace. We all have rules to follow and selling a widget or something doesn't mean I agree with all the rules that go with that widget. How about, how about a restaurant that flies a confederate flag that violate the unwelcome clause. Probably, it would depend on the context. If it was a confederate flag and only confederate flag and it was located in Alabama. That would be one thing, but you know State would stick with Colorado. I think From your office. Well, I think it would depend very much on on the context. In some circumstances, yes. In some circumstances, no. If there was a historical collection of flags or it was it was flown in a way that invoked ridicule or I'm gonna have to hire a lawyer to tell me whether this is good context or bad context. Why doesn't that over broader bag. Well, because I think these extremes illustrate why in the mind run of cases, there is no concern. Because all it says is if you open a business, you have to serve all based on protected class status and you can't Make people you can't turn people away solely because of who they are. And sure, they're going to be hard cases on the margins with confederate flags, etc. But, but that is not a problem that faces most businesses. In Colorado, as they strive to comply with this law. And if that is a problem that is certainly one that that awaits review. Based on that specific fact pattern, not on the broad facial challenge that the company brings here before they even have a single customer or have made a single statement. Designed a single, single website. So for the reasons we've discussed, and if there are no further questions, we urge that the court court affirm the denial of the company's efforts to block the discrimination law below. Thank you, Mr. Olson. We have some revital time for Miss Wagner. May proceed. Thank you, Your Honor. Let's make it clear that in terms of what Colorado is arguing is that they're arguing that they can compel speech not conduct or services. It doesn't matter what label they place on it. It is speech that they're compelling and it violates The compelled speech doctrine. The Eighth Circuit has decided a case very similar telescope media group to this case and made that determination as well as has the Arizona Supreme Court. Masterpiece did not deal with speech, but actually masterpiece itself said speech would be protected in some circumstances under these laws subsequent cases play that out, including the Janice case as well. And the stipulations, Your Honor, Your Honor. May I finish my sentence. Yes, you I'll give you another two minutes because we went over with say to Colorado. So, or you give her two more minutes, please. Thank you, Your Honor. In addition, Miss Smith is not choosing her customer. She's choosing her content and we can look at many different cases that play that out in terms of publishers fundraisers And other entities as well newspapers and so on. In addition to that, I think we need to consider the implications of this rule Colorado's Saying that they can define public accommodation in any way they want and sweep in any Isn't there a compelling interest in this case in the in the accommodation clause. Isn't there a compelling interest. No, there is not because the distinction is being made based on the message, not the person. Miss Smith is treating everyone equally. She's essentially making all of her decisions based on the message and that stipulated Can't the message discriminate Well, certainly the court has said in the past that the proudest boast of our free exercise and free speech jurisprudence is that we actually protect speech, even that we dislike. But in this case, the message isn't discriminatory. It is exclusively focused on the fact that in this case Colorado stipulated every website expresses a custom message celebrating marriage. For the first time that Colorado has claimed that this case might not be right or that more facts need to be I want to talk about strict scrutiny and I want to talk about Compelling interest and whether this provision is narrowly tailored And I'm still trying to understand your response to compelling interest. If it is speech. Hasn't it been narrowly tailored here and isn't there a compelling interest. By Colorado in Passing see a DA as it has to address discrimination against same sex couples. Not at all. It's not only not nearly tailored, but this court and neither the Supreme Court have found a compelling interest in compelling speech that simply hasn't happened. First of all, Hurley tells us that in and of itself, all of the arguments. Is speech being compelled here. Yes, it is. And it's a content based regulation. In addition to a viewpoint based regulation. So there are three reasons that the court would apply strict scrutiny. Speech is being compelled because Colorado saying if she dares to speak on marriages and her belief about marriage between one man and a woman through these websites, then she must be an opposing viewpoint and If you can you can compel speech. Can you not in certain instances. The only time you can compel speeches when it's incidental and the speech is not incidental. May I finish my answer. Go and finish your answer. The speech is not incidental and the Supreme Court, as well as this court and Crestman and other cases have held that a generally applicable law that is does have a direct impact on speech warrant strict scrutiny. The promises of a burger fell and masterpiece apply and Hurley apply justice equally to the religious believer like Mrs. Smith. As to any other speaker. Otherwise, those promises are hollow. No one should be forced to be compelled to express a message that violates their conviction. Thank you, Your Honor. Counsel, I appreciate the quality of the arguments in this matter in the brief briefing is also excellent counsel, you will be excused in the case shall be submitted.